STATE of Tennessee, Appellee,

v.

Amos Curtis COPENNY, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 25, 1993.

Permission to Appeal Denied by Supreme Court Oct. 4, 1993.

Certiorari Denied Oct. 4, 1993.

**452**

A. Christian Lanier, III, Chattanooga, on Appeal, William R. Heck, Chattanooga, Ardena J. Garth, District Public Defender, Karla Gothard, Asst. Dist. Public Defender, Chattanooga, at Trial, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, Jeannie Kaess, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Frank M. Groves, Jr., Asst. Dist. Atty. Gen., Chattanooga, for appellee.

## OPINION

SUMMERS, Judge.

The appellant, Amos Curtis Copenny, was indicted for first-degree murder. A jury of his peers convicted appellant of second-degree murder, a Class A felony. The trial court sentenced him to sixty (60) years as a career offender. Appellant presents an appeal as of right, contesting the following issues:

I.   Whether the trial court erred in refusing to admit into evidence proof of the victim's propensities for violence and drug abuse.

II.   Whether the trial court erred in admitting into evidence the testimony of Lawanda Hughley concerning a prior shooting at the victim.

III.   Whether the trial court erred in failing to grant a motion for judgment of acquittal.

IV.   Whether the trial court erred in admitting into evidence an altercation between the appellant and Janie Jones.

V.   Whether the trial court erred in sentencing the appellant.

### FACTS

On the morning of September 4, 1990, the victim, Bobby Wilson, was shot to death near the corner of Sixteenth Street and Market Street in Hamilton County. No one witnessed the shooting.

The defense presented the only witness to the events immediately preceding the shooting. Anthony Robinson testified that on the morning of September 4 he was on his way to work. While waiting for a bus on the corner of Sixteenth and Market, Robinson saw a car turn onto Sixteenth Street. As soon as it turned, the car began backing up, until it was parked perpendicularly in the middle of Sixteenth. Robinson turned around to look for the bus when he heard the sound of three or four gunshots coming from the direction of the car. He ran for cover and, looking back, saw the car still parked in the middle of Sixteenth and a smaller vehicle about twenty-five feet farther down the street. He thought that he saw the victim kneeling behind the opened, passenger-side door of the vehicle.

The state introduced testimony from individuals at the J. Telford Freeman Brake Service, a business located on the corner of Sixteenth and Market. Witnesses there heard between one and four shots. Some of the witnesses stated that the last shot was louder than the others. Soon after the gunfire ended, a man ran into the Brake Service building and dropped a .44 caliber pistol on the floor. Clutching his chest, he shouted, "Call the ambulance. I've been shot."

Bill Dickson, owner of the Brake Service, saw two cars on Sixteenth Street. One was

parked in the middle of the street, perpendicular to the curb, with its rear end in the Brake Service parking lot and its driver-side door open. The other car was driving backward, up Sixteenth Street, away from the parked car.

William Gilliam of the Chattanooga Police Department was at the Erlanger Hospital Emergency Room when the victim was brought in with a gunshot wound to his chest. Officer Gilliam asked the victim what had happened, and he informed the officer that "Purenie Copenny—Amos Copenny" had shot him. The victim later died at the hospital.

Police found a Smith & Wesson .44 caliber pistol on the floor of the brake company. Outside, a 1978 Chevrolet Caprice was parked perpendicular to Sixteenth Street. An investigation of the vehicle revealed two .44 caliber live rounds in the front seat. A projectile appeared to have struck the trunk area. Metal protruded up at an angle indicating that the vehicle was struck by someone firing from behind. An examination of the revolver dropped by the victim revealed six shells in the chamber, only one of which had been expended. The shells had brass jackets, and the hole in the trunk of the vehicle contained residue of a lead projectile and a brass jacket. A short distance from the rear of the vehicle, police found a lead nosed projectile lying in the parking lot. The police identified the projectile as a .38 caliber bullet.

While investigating the appellant's residence, Officer Lynn Bible of the Chattanooga Police Department received a .38 caliber pistol from appellant's mother. Police determined that the .38 caliber projectile found in the parking lot matched the .38 caliber gun appellant's mother gave to the police. Police compared the sounds made by firing a .44 caliber weapon and a .38 caliber weapon. They concluded that a .44 weapon would be louder.

Dr. Frank King, the Hamilton County Medical Examiner, testified that the victim died from a single gunshot wound to the chest. The appearance of the victim's wound was consistent with a distant gunshot wound—two feet or greater from the body at the time the shot was fired.

Lovelle Johnson, appellant's brother-in-law, knew that appellant and the victim were having problems. He stated that one day appellant came to his house with a .38 caliber pistol and fired it in his backyard. Appellant informed Johnson that he was going to shoot the victim.

The victim had spent the weekend before the shooting with Lawanda Hughley. That weekend, the victim and Ms. Hughley were walking to their car when someone called the victim's name. He walked to the rear of the vehicle to investigate when gunshots struck the car's back window and its right rear section. Ms. Hughley stated that at the time of the incident the victim was not carrying a gun nor had she ever known him to carry a gun. She stated that after the incident he purchased a gun.

Janie Jones testified that she has a child by the appellant. They lived together for some time before appellant left town. When he came back, she was seeing the victim. She stated that on one occasion she was in the victim's vehicle when appellant walked up to her and told her to get out of the car. She refused and started to drive away when appellant said, "Bitch, ... if I want to get to you, I could get to you." He then broke her driver-side window. At a later time, he told Ms. Jones to tell the victim that, "I've got something for him." He also said, "Tell your friend that I am going to get him." As a result of these threats, she and the victim decided to end their romance. She stated that she had never known the victim to carry a weapon.

Testifying for the appellant, Aliscia Patillo stated that she and appellant were at Larry's Lounge about four weeks before the shooting when the victim came in and told appellant, "You and your bitch can go down." The victim then left and appellant followed him out the door. Ms. Patillo watched appellant walk towards his car and saw the victim run past him with a gun. Two other men surrounded the appellant with guns. Appellant tried to get into his car, but the victim began to fight with him. One of the other men hit

appellant in the head with the butt of a pistol, and the gun discharged.

Sabryna McClendon testified that she spent the weekend before the shooting with appellant. They were together from the time he got off work on Friday until Sunday night around ten o'clock. She also saw appellant the morning of September 4, when she became sick and called appellant. He came to her residence and drove her to her grandmother's house. They spent the night there, and he left in the morning.

Appellant's sister, Brenda Johnson, also testified for the defense. She has been married to Lovelle Johnson for three years. Lovelle Johnson informed her that he was going to damage appellant's case because another of the appellant's sisters had stolen his car.

## I.

In his first issue, appellant contends that the trial court erred in not admitting into evidence proof of the victim's propensities for violence and drug usage. In particular, appellant wanted to offer proof of: (1) the victim's convictions for drug offenses and drug offenses pending against the victim at the time of his death; (2) the presence of cocaine in the victim's blood stream; (3) a small amount of marijuana found in the victim's pocket at the time of his death; and (4) an unremoved bullet in the victim's body from a previous shooting incident as well as several scars from prior altercations.

■ Appellant argues that evidence of the victim's prior convictions and pending charges for drug use should have been admitted to prove the victim's propensity for violence. Appellant asserts that it would prove that the victim was not carrying a gun for protection purposes but regularly carried one due to his drug-related activities. The trial judge denied the admission of the victim's prior crimes into evidence stating, "I do not see a logical inference from the fact that Bobby Wilson [the victim] had been convicted of felonious possession of marijuana and felonious possession of cocaine, therefore he carried a gun." We agree with the trial court that this evidence is not relevant. Tenn.R.Evid. 401, 402.

The appellant asserts that the court erred in prohibiting evidence showing that the victim was under the influence of cocaine at the time of the shooting. He contends this evidence is relevant in proving that the victim was the first aggressor in the fight because cocaine may cause a person to act violently. Appellant, however, presents no evidence that the victim had taken cocaine. Dr. Frank King, the medical examiner, testified that he requested a drug screen, but the TBI failed to perform the test. Additionally, the only substance found in the victim's body during the autopsy was lidocaine, a drug used in heart resuscitation.

■ Appellant argues that the trial court should have admitted evidence that officers found a small amount of marijuana in the victim's pocket at the time of his death. The amount of marijuana was .05 grams. Appellant presents no proof that the victim had any marijuana in his system at the time of the shooting. We can find no logical inference between the fact that the victim had a small amount of marijuana in his pocket and the appellant's theory of self-defense. This evidence is not relevant. Tenn.R.Evid. 401, 402.

■ Finally, appellant argues that the trial court erred in not admitting evidence of an unremoved bullet in the victim's body from a previous shooting incident and several scars on his body from prior altercations. Appellant's seeks to use this evidence to show the victim's propensity for violence and the fact that appellant acted in self-defense. See State v. Furlough, 797 S.W.2d 631 (Tenn. Crim.App.1990). While this evidence may meet the relevance test of Rule 401 of the Tennessee Rules of Evidence, we believe that it was properly excluded. The fact that the victim carried a bullet from a gunshot wound and had scars on his body does not automatically reflect a propensity towards violence. The bullet and scars could have resulted from any number of things other than the victim's own violent acts. This evidence is excluded under Rule 403 because its potential for unfair prejudice, confusion of the issues, and misleading the jury substantially outweighs its probative value. Tenn.R.Evid. 403.

■ The decision to admit or exclude evidence is left to the sound discretion of the trial judge, and his or her decision will not be disturbed unless it is arbitrarily exercised. *State v. Baker,* 785 S.W.2d 132, 134 (Tenn. Crim.App.1989). We do not believe that the trial court abused its discretion in refusing to allow appellant to offer the foregoing into evidence.

## II.

In his next issue, appellant contends that the trial court erred in admitting the testimony of Lawanda Hughley. According to appellant, Ms. Hughley's testimony caused unfair prejudicial error because it implied that appellant made an unsuccessful attempt on the victim's life.

The state contends that the trial court properly admitted Ms. Hughley's testimony to rebut evidence presented by appellant that the victim was the first aggressor. The appellant presented the testimony of Aliscia Patillo, who stated that about four weeks before the victim was killed, he entered a lounge and confronted the appellant. Brandishing a gun, the victim threatened appellant and later attacked him. The state argues that it was entitled to present rebuttal evidence to demonstrate that the victim never carried a gun until he was first fired upon.

While we are not entirely persuaded that Ms. Hughley's testimony is character evidence, we believe the state's argument rests, at least in part, on Rule 404(a)(2) of the Tennessee Rules of Evidence. This rule is an exception to the general rule that evidence of a person's character or trait of character is not admissible to prove action in conformity therewith on a particular occasion. Tenn.R.Evid. 404(a)(2). The rule states the following exception:

> Evidence of a pertinent character trait of the victim of crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to *rebut evidence* that the victim was the first aggressor.

Tenn.R.Evid. 404(a)(2) (emphasis added). Under this rule, then, the state may introduce evidence of the victim's reputation for peacefulness to rebut evidence that the victim was the first aggressor.

■ Appellant's counsel alluded to the victim's being the first aggressor in his opening statement; however, he proffered no evidence of this before the state introduced testimony that the victim had never carried a gun until fired upon. As such, this evidence was improper and irrelevant under Rule 404(a)(2) at this point in the trial.

■ Additionally, the state argued, during its opening statement, that Ms. Hughley's testimony would be introduced for the purpose of showing the victim's fear of being harmed at a later time—his state of mind. Again, we believe that the relevance of this evidence is questionable and does not outweigh its prejudice to appellant. We nevertheless conclude that the admission of this evidence was harmless. The state's testimony contains no reference to the appellant. Moreover, much of this evidence would have come in after appellant raised the issue of self-defense. In light of this and the evidence presented at trial, we do not believe that the testimony of Ms. Hughley caused error of prejudicial dimensions. This issue is overruled.

## III.

Appellant next contends that the evidence was insufficient to support his conviction for second-degree murder.

■ In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Williams,* 657 S.W.2d 405 (Tenn. 1983). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Cabbage,* 571 S.W.2d 832 (Tenn.1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. *State v. Grace,* 493 S.W.2d 474 (Tenn.1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); T.R.A.P. 13(e). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. *State v. Sheffield,* 676 S.W.2d 542 (Tenn. 1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn. Crim.App.1978).

For a defendant to be convicted of second-degree murder, there must be "[a] knowing killing of another." T.C.A. § 39–13–210(a)(1). Tennessee Code Annotated Section 39–11–302(b) defines "knowing" as follows:

> "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. *A person acts knowingly* with respect to a result of the person's conduct *when the person is aware that the conduct is reasonably certain to cause the result.*

T.C.A. § 39–11–302(b) (emphasis added).

From the evidence adduced at trial, we believe that the jury could have reasonably inferred that appellant committed the knowing killing of the victim. Appellant's argument that the killing was done in self-defense was a question of fact for the jury. The jury rejected appellant's theory and the evidence supports the jury's finding.

## IV.

Appellant next contends that the trial court erred in admitting into evidence a prior altercation between him and Janie Jones. Appellant and Ms. Jones once lived together and the two have a child. Appellant left town for a period of time and in his absence, Ms. Jones began seeing the victim. In the incident in question, appellant approached Ms. Jones while she was in the victim's vehicle and told her to get out of the car. She refused, and they exchanged words. As she began to drive away, appellant stated, "Bitch, ... if I want to get to you, I could get to you." Appellant then pulled and broke the vehicle's driver-side window.

We find this evidence to be relevant under Rule 404(b) of the Tennessee Rules of Evidence for the purpose of showing appellant's motive for committing the crime in question. The court, however, failed to address the procedural safeguards which must be satisfied before admitting evidence under Rule 404(b). *See* Tenn.R.Evid. 404(b)(1)–(3). In any event, we find that appellant has waived this issue by failing to make timely objection. *State v. Hopper,* 695 S.W.2d 530 (Tenn.Crim.App.1985); *State v. Keele,* 644 S.W.2d 435 (Tenn.Crim.App.1982).

## V.

Lastly, appellant complains that the trial court erred in sentencing him as a career offender.

Tennessee Code Annotated section 40–35–108(a) states that a defendant is a career offender if he has received:

> (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony;
>
> (2) At least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony....

T.C.A. § 40–35–108(a)(1), (2).

In the present case, appellant has eight (8) prior felony convictions in Classes A through C. Many of these offenses, however, were committed on the same day, and appellant contends that in accordance with T.C.A. § 40–35–108(b)(4), they should constitute only one conviction. We disagree.

> Convictions from multiple felonies committed as part of a single course of conduct within twenty-four (24) hours constitutes one (1) conviction for the purpose of determining prior convictions; however, *acts resulting in bodily injury or threatened injury to the victim or victims shall not be*

*construed to be a single course of conduct*
. . . .

T.C.A. § 40–35–108(b)(4) (emphasis added).

Of the three felonies appellant committed on November 8, 1979, that were Class A through C felonies, all three either resulted in bodily injury or threatened bodily injury to the victim or victims. These felonies were (1) assault with intent to commit murder in the first degree; (2) armed robbery; and (3) aggravated assault. Of the Class A through C felonies appellant committed on October 3, 1979, all three resulted in bodily injury. These felonies were (1) assault with intent to commit first-degree murder; (2) assault with intent to commit second-degree murder; and (3) aggravated assault. In addition to these felonies, appellant also committed (1) assault with intent to commit first-degree murder and (2) burglary in the second degree on separate dates. As such, appellant meets the criteria of both (1) and (2) of T.C.A. § 40–35–108. The trial court correctly sentenced appellant as a career offender.

We affirm the judgment of the trial court.

TIPTON and WHITE, JJ., concur.