# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### June 19, 2001 Session

## STATE OF TENNESSEE v. JAMES LARRY COX

**Appeal from the Circuit Court for Grundy County**
**No. 3345     Thomas W. Graham, Judge**

---

**No. M2000-02556-CCA-R3-CD - Filed September 7, 2001**

---

A Grundy County jury convicted the Defendant, James Larry Cox, for the attempted second degree murder of Jimmy Sweeton. Subsequently, the trial court sentenced the Defendant as a Range I offender to ten (10) years of incarceration. On appeal, the Defendant questions whether he was denied a fair trial due to the trial court's exclusion of evidence relating to the victim's reputation for violence, and whether he was improperly denied the right to question the victim about a prior conviction. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**.

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES, J. and TERRY LAFFERTY, SP.J., joined.

Phillip A. Condra, District Public Defender, for the appellant, James Larry Cox.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; James Michael Taylor, District Attorney General; Steven Strain, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On the afternoon of May 20, 1999, Jimmy Sweeton, the victim, was at the Stop and Go Bar playing pool and drinking beer. At some point, the Defendant's mother dropped him off at the Stop and Go. The Defendant and Sweeton engaged in conversation and shared some beers. A few hours later, Sweeton prepared to leave the bar, and the Defendant asked Sweeton to give him a ride home. Sweeton agreed, but first he stopped to let the Defendant buy some beer. During the drive to Defendant's home, Sweeton and the Defendant continued to carry on a casual conversation. Upon arriving at the Defendant's home, Defendant's mother came out to meet the two men. The Defendant went to take his beer in the house and encouraged Sweeton to stay and talk with Ms. Cox.

Sweeton testified that, as he and Ms. Cox were talking, the Defendant came out of the house with a shotgun, yelling "I'm fixing to kill you and that bitch mama of mine too." Sweeton stated that he got out of his truck and ran behind the bed of his truck to protect himself from the Defendant. Sweeton testified that he tried to evade the Defendant by ducking behind his truck. He said that the Defendant held the gun to his shoulder and appeared to be aiming for his head. Sweeton explained that, as he ducked for a final time, the Defendant fired the gun at him. The majority of the gun pellets hit the top of the truck bed, but some pellets struck Sweeton in the neck, both arms and in the chest. As the Defendant prepared to reload the shotgun, Sweeton grabbed an ax from the back of his truck, which he used to knock the gun out of the Defendant's hands. Then, Sweeton proceeded to "beat the devil out of [the Defendant]." He held the Defendant on the ground until the police arrived.

Robert Meeks, the sheriff of Grundy County, testified that at approximately 4:45 p.m. he received a call regarding a disturbance at the home of Ms. Cecial Cox. When Sheriff Meeks arrived, he saw the Defendant laying on the ground near the passenger side of Sweeton's truck, with the EMS attending to his "superficial wounds". He testified that the Defendant was bleeding. Meeks stated that he interviewed both Ms. Cox and Sweeton at the scene of the crime, but did not hold further interviews with them. Sheriff Meeks also testified that he recovered a 12-gauge shotgun and four shotgun shells from the front yard of the Cox home. He said that one of the four shells had been discharged. Meeks also acknowledged that he did not recover any evidence from the bed of Sweeton's truck. He stated that, while he "wrote down a statement about an ax, [he] did not remember seeing an ax."

Meeks further testified that, on the following day, he took photographs of Sweeton and his truck. Meeks told the jury that he did not take any photographs at the scene or take any measurements. He also admitted that he did not take a formal statement from Ms. Cox, Sweeton or the Defendant. The sheriff acknowledged that he did not know whether the shotgun was in the same condition it was in at the time of this incident.

The State rested its case-in-chief.

Cecial Cox Nolan ("Ms. Cox") testified that, on the day of this incident, she arrived home to find the Defendant and Sweeton engaged in an argument. The Defendant had a shotgun in his hand and the victim had an ax in his hand. She stated that Sweeton kept stating that he needed to get under the hood of his truck, but the Defendant would not let him. She further stated that the Defendant kept asking Sweeton to leave, but Sweeton refused. Ms. Cox testified that as Sweeton began to advance toward the Defendant with the ax, the Defendant fired a shot. As the Defendant attempted to reload, Sweeton ran and swung at the Defendant with the ax, but Sweeton missed the Defendant and knocked the gun out of Defendant's hands. Sweeton then proceeded to beat the Defendant severely. Ms. Cox said that she grabbed Sweeton's ax and hid it in the house, and then she called the police. She stated that an ambulance came and took her son away. When the police arrived, she talked with Sheriff Meeks for a few moments. Later, she gave Sweeton his ax.

-2-

On cross-examination, Ms. Cox testified that Sweeton did not make a move towards the Defendant, until after the Defendant had shot Sweeton. She also admitted that the Defendant and Sweeton were separated at all times by Sweeton's truck, until after the shot was fired.

The Defendant testified that, during the drive from the bar to his home, Sweeton told him that he kept a gun underneath the hood of his truck. He stated that this information made him nervous, because he knew about Sweeton's reputation. Upon arriving at his mother's home, the Defendant got out of the truck to go into the house and waited for Sweeton leave. The Defendant testified that Sweeton wanted to come in the house and drink some of the beer Defendant had purchased on the way home. Defendant said he repeatedly asked Sweeton to leave, but he refused. The Defendant stated that Sweeton grabbed his ax and said he would knock out the Defendant's brains.

At that point, Defendant's mother arrived home and started inside the house, but the Defendant asked her to stay outside. The Defendant went inside, got a shotgun and again asked Sweeton to leave. Defendant testified that Sweeton said he wanted to check his oil, but the Defendant would not let him, since Defendant knew Sweeton kept a gun under the hood. The Defendant put the gun to his shoulder and told Sweeton "don't make me shoot you." He stated that he repeated this statement several times. The Defendant said that, just before the gun fired, he was holding the gun down, when it fired and shot Sweeton. The Defendant also testified that his shotgun had a hair trigger, which caused it to fire so easily. He said that he was not trying to shoot Sweeton, and that if he had been trying to, Sweeton "wouldn't be here today."

The defense rested its case, and the State recalled Sheriff Meeks as a rebuttal witness to Ms. Cox's testimony. Sheriff Meeks testified that, when he arrived at the Cox residence, he asked Ms. Cox about what had happened, and she responded "I don't know what's happened. I don't know what's the matter with Larry." Meeks said that he then asked her if the Defendant and Sweeton were fighting, and Ms. Cox replied "[n]o, they wasn't fighting." Meeks also stated that Ms. Cox told him that "Jimmy, Mr. Sweeton hadn't done nothing." On cross-examination, Sheriff Meeks admitted that he had not taken any notes from his interview with Ms. Cox, and that he did not recall seeing an ax.

## ANALYSIS

### I. Admissibility Of Opinion And Reputation Evidence

The Defendant contends the trial court denied him the right to a fair trial by excluding evidence of the victim's reputation for violence. We disagree.

Generally, character evidence is inadmissible to prove action in conformity with character on a particular occasion. Tenn. R. Evid. 404(a). However, circumstantial evidence of a victim's violent character, offered in the form of reputation and opinion evidence, is governed generally by Tennessee Rules of Evidence 404(a)(2) and 405. Additionally, reputation or opinion evidence must be relevant to the victim's character at the time the charged offense was committed. N. Cohen, S.

Sheppeard, & D. Paine, *Tennessee Law of Evidence*, § 4.05[3][a] (4th ed. 2000). The defendant or other witnesses may testify on direct or cross-examination about their opinion of the victim's violent character or the victim's reputation for violence in the community. Tenn. R. Evid. 405(a).

Moreover, evidence that the victim was the first aggressor may be admitted on the direct testimony of any witness to corroborate that the victim was the first aggressor. See State v. Ruane, 912 S.W.2d 766, 779 (Tenn. Crim. App. 1995) ; State v. Hill, 885 S.W.2d 357, 361 n. 1 (Tenn. Crim. App. 1994) ; State v. Furlough, 797 S.W.2d 631, 649 (Tenn. Crim. App. 1990). Before proof of first aggression is admitted, certain conditions must be satisfied. First, the question of self-defense must be raised by evidence in the record. Words and statements of counsel are not sufficient. Ruane, 912 S.W.2d at 781. The trial court must then determine if there is a factual basis underlying the proffered testimony, and whether the probative value of the evidence must outweigh any prejudicial effect. Id. The decision to admit or exclude evidence is left to the sound discretion of the trial judge, and that decision will not be disturbed by this Court unless it is arbitrarily exercised. State v. Copenny, 888 S.W.2d 450, 455 (Tenn. Crim. App. 1993).

During the State's case-in-chief, the defense attempted to elicit testimony from Sheriff Meeks, while on cross-examination, concerning his opinion or knowledge of the victim's reputation for violence in the community. The trial court held a jury-out hearing to assess the nature of Meeks' opinion and possible testimony. The State argued that this testimony was not admissible because the issue of self-defense had not been raised by the evidence. The trial court determined that the self-defense theory had not been adequately raised, and that it was unsure as to whether Sheriff Meeks had an opinion as to the victim's reputation for violence. Therefore, the trial court declined to admit this testimony, but noted that, if self-defense were raised by the remaining proof, the defense could recall Sheriff Meeks.

We conclude that the trial court acted properly when it prohibited the defense from admitting evidence of the victim's reputation for violence via the testimony of Sheriff Meeks. Before witnesses, other than the defendant, can testify about the victim's violent conduct in order to corroborate the defendant's theory that the victim was the first aggressor, the issue of first aggressor or self-defense must have been raised by the evidence. Ruane, 912 S.W.2d at 780-81. At the time that the defense was raising this issue, there had been no proof of self-defense. Thus, the trial court was correct to initially refuse to allow cross-examination about the victim's reputation for violence.

Following testimony from the Defendant and his mother, the State recalled Sheriff Meeks to rebut Mrs. Cox's testimony. During the cross-examination of the sheriff, the defense, again, sought to question the sheriff as to his knowledge of the victim's reputation for violence in the community. The trial court held a second jury-out hearing and determined that the first aggressor issue had been raised, and therefore the defense was entitled to question other witnesses about the victim's reputation for violence in the community. During the jury-out, Sheriff Meeks testified that he did not have an opinion of Sweeton's character for violence, but that he had heard from one person that the victim could be dangerous when he was drinking. The trial court determined that the

sheriff did not have an opinion as to the victim's reputation for violence, and that the opinion of one person cannot establish a victim's reputation in the community.

While Rule 405(a) permits the defendant to introduce evidence from a witness regarding a victim's reputation for violence, the witness must lay a foundation for their testimony. N. Cohen, et al., *Tennessee Law of Evidence*, § 4.05[3][b]. In order to establish the proper foundation for reputation or opinion testimony,

> [a]n opinion witness must establish that, through personal experience, he or she is sufficiently familiar with the person whose character is being discussed to have been able to form an opinion of that person's character. . . . A reputation witness, on the other hand, must show, in order to satisfy the hearsay rule, familiarity with the person's 'reputation among associates or in the community.' Reputation, of course, refers to the collective assessment of a *group of people.*

Id. (emphasis added).

We conclude that the opinion of one person cannot form the basis for a person's reputation in the community. Therefore, the trial court did not abuse its discretion in ruling that Sheriff Meeks could not testify as to the victim's reputation for violence in the community. The Defendant is not entitled to relief on this issue.

## II. Admissibility of the Victim's Prior Convictions under Rule 609

Next, the Defendant argues that the trial court erred in ruling that he could not question the victim about a prior conviction. The Defendant contends that evidence of the victim's prior felony conviction was admissible, because 1) the State opened the door by asking the victim if he had been convicted of a prior felony; and 2) Tenn. R. Evid. 609 permits inquiry into prior convictions on cross-examination.

At trial, defense counsel attempted to ask the victim about whether his prior felony conviction had involved a crime of violence. This question drew an objection from the State, which the trial court sustained. The trial court and the attorneys engaged in a bench conference, and the trial court determined that it would not allow the defense to ask the victim about the nature of his felony conviction, until the court had time to examine the issue further. At the close of defense counsel's cross-examination of the victim, the judge ruled that defense could ask the victim about the nature of his prior felony conviction. The trial court ruled that the Defendant could introduce evidence of the victim's "prior bad acts on the issue of an initial aggressor." The Defense declined to question the victim any further, but reserved the right to recall the victim. The record reflects that the victim was never recalled or questioned by the defense.

We conclude that the Defendant had a right to question the victim about his prior conviction, pursuant to Tenn. R. Evid. 609. However, we also find that the Defendant's failure to question the

victim, after receiving the favorable ruling from the trial court, constitutes waiver of this issue. Tenn. R. App. P. 36(a). Notwithstanding waiver, we find that the trial court did not abuse its discretion in sustaining the objection, until further review, and then allowing the Defendant to ask the victim about his prior convictions. The Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE